IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-CR-199 (RDM) |
| v. | : | 18 U.S.C. 111(a)(1) & (b) |
| JOSHUA LEE ATWOOD, | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Joshua Lee Atwood, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.  In January 2021, the defendant, Joshua Lee Atwood, lived in Burgettstown, Pennsylvania. On or about January 6, 2021, the defendant traveled from Pennsylvania to Washington, DC, to attend a political rally dubbed the "Stop the Steal" rally, which was organized to protest the results of the 2020 Presidential election. Atwood wore a dark jacket, dark gloves, and a blue/gray backpack.

9.  Atwood arrived at the National Mall after former President Trump's speech at the rally.

10. After the rally, the defendant went to the U.S. Capitol, where he saw a large crowd had assembled on restricted grounds surrounding the Capitol building. The defendant entered the grounds from the west, where he then made his way to the inaugural stage's northwest scaffolding.

11. Beginning at approximately 2:42 p.m., numerous members of the mob assembled on the west side of the U.S. Capitol attacked U.S. Capitol Police, Metropolitan Police Department, and other responding officers—including Virginia State Police officers—who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as the "Tunnel." Over the course of several hours, multiple members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police, and stole items from the police defending the Tunnel.

12. By approximately 4:22 p.m., the defendant joined the mob gathered at the Lower West Terrace Tunnel. By the time Atwood arrived at the Tunnel, he observed that law enforcement officers were actively attempting to prevent members of the crowd from entering the building.

13. Around approximately 4:35 p.m., the defendant climbed through a broken window next to the Tunnel and entered the Senate Terrace Room 2—Mezzanine, which is a room in the U.S. Capitol building located directly to the north of the Lower West Terrace Exterior Doors.

14. After exiting the Capitol building, the defendant, by approximately 4:51 p.m., made his way into the forward rows of the mob gathered around the Tunnel entrance, which was being defended by Metropolitan Police Department officers and other officers, including Virginia State Police officers, who responded to the Capitol to assist U.S. Capitol Police.

15. Between approximately 4:51 p.m. and 4:53 p.m., the defendant threw several objects at officers in the Tunnel, including a plastic bottle and a metal pole. The bottle flew into the Tunnel and struck an officer positioned near the back of the Tunnel. The metal pole flew into the south wall of the Tunnel and struck a nearby officer.

16. At approximately 4:53 p.m., the defendant picked up a long, thick, wooden pole and used the wooden pole to forcibly strike the riot shields of officers at the front of the police

line. The defendant then pulled the pole back and forcibly thrust the tip of the pole such that it stabbed at and struck an officer's helmet. The wooden pole was capable of causing serious bodily injury, and the defendant used it in that manner when he voluntarily, intentionally, and forcibly struck and stabbed at officers using the pole. The defendant then threw the pole into the group of officers, where the pole hit officers' riot shields before ricocheting off the Tunnel's south wall.

17. At approximately 4:56 p.m., the defendant drew a pepper spray cannister and used it to spray the officers guarding the Tunnel entrance with the pepper spray. The defendant sprayed continuously until the cannister was depleted. When the cannister was depleted, the defendant threw the empty cannister at the officers.

18. At approximately 4:57 p.m., the defendant threw at least two additional items at the officers, including a yellow fabric object and another plastic bottle.

19. At approximately 5:01 p.m., the defendant threw a baseball bat at the officers and picked up a large riot shield that had been taken from officers by another rioter.

20. At approximately 5:02 p.m., the defendant used the riot shield to strike officers guarding the Tunnel, including by thrusting the bottom edge of the riot shield forward into officers' riot shields.

21. While striking officers with the riot shield, the defendant yelled the following statements at officers:

   a. "Fuck off, you guys are all pieces of shit."
   b. "Everyone of you should be ashamed of yourself. Everyone of you mother fuckers are pieces of shit. Betraying your country like this, why would you betray your county. Do you love our country, or do you want civil… communist fuck."
   c. "… pieces of fucking shit. Everyone of you motherfuckers."

22. Shortly thereafter, the defendant picked up a metal scaffolding pipe and threw it into the group of officers. The scaffolding pipe struck an officer's riot shield before hitting another officer's head and neck.

23. Moments later, the defendant picked up a heavy black speaker and threw it towards the group of officers.

### *Elements of the Offense*

24. The parties agree that Count Two, charging a violation of 18 U.S.C. § 111(a)(1) and (b), requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the Metropolitan Police Department and Virginia State Police.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, the officer or officers who were assaulted, resisted, opposed, impeded, intimidated, or interfered were officers assisting officers of the United States who were then engaged in the performance of their official duties.

   e. Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

### *Defendant's Acknowledgments*

25. The defendant knowingly and voluntarily admits to all the elements as set forth above as to Count Two of the Indictment. Specifically, the defendant admits that:

   a. On January 6, 2021, he voluntarily, intentionally, and forcibly assaulted, resisted, opposed, intimidated, impeded, and interfered with an officer of the Metropolitan Police Department, who was assisting officers of the United States and engaged in

the performance of their official duties. The defendant also admits that he intentionally used a deadly or dangerous weapon, that is, a long wooden pole.

b. The defendant knew that the MPD officers and other police officers he attacked on January 6, 2021, were police officers lawfully engaged in the performance of their official duties protecting the Capitol and the people inside, and his assault was motivated by such status.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Nathaniel K. Whitesel
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759

## DEFENDANT'S ACKNOWLEDGMENT

I, Joshua Lee Atwood, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8-21-24

Joshua Lee Atwood
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/23/24

Amy Collins
Attorney for Defendant